IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 20, 2017

**DOROTHY DENISE CROSS v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 105657   Bob R. McGee, Judge**

_____

**No. E2017-00263-CCA-R3-PC**

_____

The Petitioner, Dorothy Denise Cross, filed a petition for post-conviction relief from her assault conviction, alleging that trial counsel was ineffective by failing to seek a continuance due to the Petitioner's mental health issues. The post-conviction court denied the petition, and the Petitioner appeals. Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the Appellant, Dorothy Denise Cross.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Charme P. Allen, District Attorney General; and Ashley McDermott, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

At trial, the State's proof revealed that in September 2011, the victim, a native of Honduras, and her family moved to an upstairs apartment of a house in Knoxville. State v. Dorothy Denise Cross, No. E2013-02133-CCA-R3-CD, 2014 WL 4748337, at *1 (Tenn. Crim. App. at Knoxville, Sept. 25, 2014). The Petitioner lived in a downstairs apartment of the house. Id. On September 16, 2011, the victim, who was seven months pregnant, accidentally locked herself out of the apartment. Id. A relative contacted the victim's husband and told him to come home and unlock the door. Id. While the victim waited on the front porch for her husband, the Petitioner came home and began arguing

with her, but the victim spoke only Spanish, and the Petitioner spoke only English. Id. The Petitioner "'threw herself'" at the victim, hit her, grabbed her hair, grabbed her neck, and threw her against the wall. Id. The Petitioner then pushed the victim, and they both fell down the porch steps. Id. Afterward, the Petitioner ran away, and the victim notified the police of the assault. Id.

The Petitioner testified that at the time of the incident, she had been living in the apartment for approximately two months. Id. at *2. The landlord would not make any repairs to the apartment, and the lock on her apartment door did not "'lock all the way.'" Id. On different occasions in September, the Petitioner noticed that items in her apartment had been moved and that some of her belongings were missing. Id. She repeatedly called 911 and had the police "'walk around'" her apartment to ensure her safety. Id. She suspected that the people who lived upstairs were responsible for the unauthorized entries into her apartment. Id. When the Petitioner saw the victim on September 16, she confronted the victim about her suspicions and told the victim to stay out of her apartment. Id. at *2-3. The victim responded in Spanish and reached into her purse. Id. at *3. The Petitioner thought the victim was reaching for a knife, feared for her life, and grabbed the strap of the victim's purse. Id. Both women "'fell back.'" Id. Thereafter, the Petitioner went to her apartment to change shoes and then went to a friend's house. Id. She denied hitting the victim. Id. The Petitioner was convicted of four counts of misdemeanor assault, which were merged into a single conviction. Id. at *1. On direct appeal, this court affirmed the Petitioner's conviction. Id.

Thereafter, the Petitioner filed a timely pro se petition for post-conviction relief. After appointment of counsel, two amended petitions were filed. In the petitions, the Petitioner alleged in pertinent part that "trial counsel was ineffective in not seeking a continuance due to the Petitioner's mental state at the time of trial" and that her "distressed mental and emotional state likely influenced the jury's perception of her credibility in a way detrimental to her defense." See Dorothy Denise Cross v. State, No. E2016-00104-CCA-R3-PC, 2016 WL 6110713, at *1 (Tenn. Crim. App. at Knoxville, Oct. 19, 2016). The post-conviction court summarily denied the petitions, finding the Petitioner had not alleged any behaviors that should have indicated to counsel she had mental distress, and the Petitioner appealed the court's decision. Id. This court concluded that the Petitioner had stated a colorable claim for post-conviction relief and remanded the case for a hearing. Id. at *2.

At the hearing, the Petitioner testified that the altercation occurred in 2011 and that trial counsel was appointed to represent her shortly after she was arrested. She met with him, and they "[b]riefly" discussed the case. Approximately one month prior to trial, the Petitioner told trial counsel that she was "stressed out," that she had memory problems, and that she "didn't feel comfortable because of [her] mental status." She explained that the unauthorized entries into her apartment had caused her to fear being there and that she

- 2 -

continued to be upset by the thought of strangers in her apartment. The Petitioner acknowledged that in 2012, she moved out of the apartment and began living with her daughter in Nashville. In response to the Petitioner's concerns, trial counsel arranged for her to have mental health treatment at Peninsula.

On the day of trial, the Petitioner told trial counsel that she did not feel competent to stand trial. She explained that she "wasn't feeling comfortable" and "was still upset about what had happened." She said that she felt "violated" by the unauthorized entries into her apartment, that no one believed her, and that she was under a lot of stress. She thought she needed more counseling and possibly medication, which she was prescribed after her trial. She asked trial counsel to request a continuance, but he did not make the request. She noted that her mental health began to improve in 2015.

The Petitioner said that she testified "to the best of [her] ability" but that she was upset and frustrated, sounded more "aggressive" than she intended, and had difficulties with her memory. The Petitioner said that if her memory had been better, she would have told the jury that she had called the police several times to report the unauthorized entries into her apartment and that the police had to walk through the apartment to make her feel safer. She said that she did nothing to the victim other than caution her to stay out of the Petitioner's apartment and that during the altercation, the Petitioner fell down the steps.

On cross-examination, the Petitioner said that she met with trial counsel on only two occasions. The meetings were held in his office, and each meeting lasted approximately thirty minutes. Trial counsel told her that he had trouble understanding her.

The Petitioner said that she would not have been able to testify "appropriate[ly]" until 2015 or 2016 when her mental health began to improve. The Petitioner clarified that she never asked trial counsel to seek a continuance, explaining that "[i]t never came up" and that she did not know she could ask for a continuance. After being shown the trial transcript, she "vaguely" recalled acknowledging during a Momon[1] hearing that she knew she had the right to testify or not to testify and that she had chosen to testify. However, she asserted that she did not want to testify at trial, but trial counsel told her she had to testify.

Trial counsel testified that he had worked with the public defender's office for twenty-six years. His first meeting with the Petitioner was on November 30, 2011, and it lasted thirty or forty minutes. Trial counsel said that early in his representation, the Petitioner was "distress[ed]" about the unauthorized entries into her apartment. He thought the Petitioner's behavior was "a little manic." Accordingly, on December 20,

_____

[1]Momon v. State, 18 S.W.3d 152 (Tenn. 1999).

- 3 -

2011, he asked social services to contact the Petitioner to discuss any concerns she had regarding her housing and her mental health.

Trial counsel said that afterward, the Petitioner continued to be "distressed" when discussing the altercation but that she seemed to improve as the trial date approached. He opined that the Petitioner's mental state improved after she moved to Nashville to live with her daughter.

Trial counsel recalled that he spoke with the Petitioner six or seven times before trial. The case was reset for trial from April 2013 to July 2013. Trial counsel said that he "had done adequate investigation" and that he and the Petitioner discussed the facts of the case.

Trial counsel said that he saw no reason to request a continuance, explaining that the Petitioner was not "in a crisis that was extraordinary as it related to my understanding of her general personality." Additionally, the Petitioner did not ask him to request a continuance.

Trial counsel recalled the trial court held a <u>Momon</u> hearing to confirm that the Petitioner wanted to testify. He thought the Petitioner testified "in a satisfactory manner." He acknowledged that the Petitioner's demeanor "did not come across well to the jury," which he attributed "partly [to the Petitioner's] personality, partly [it] might just be cultural issues." He did not find the Petitioner to be "lacking or to have some extraordinary emotional response that [he] didn't anticipate or anything like that. It wasn't shocking to [him] the way she testified." He explained that he was not surprised by the way she testified because it was consistent with her behavior during their meetings.

Trial counsel said that at trial, proof was adduced that the police had to walk through the Petitioner's apartment, that someone had entered the Petitioner's apartment without her permission, and that the Petitioner had filed complaints. The Petitioner also testified that she fell backwards down the steps. Trial counsel recalled that the trial court instructed the jury regarding self-defense.

On cross-examination, trial counsel conceded that it was "undesirable" for a person accused of assault to be aggressive while testifying. He knew he referred the Petitioner to social services in December 2011, but he did not know whether she was still receiving mental health treatment at the time of trial.

At the conclusion of the hearing, the post-conviction court found that the Petitioner did not request a continuance, that no valid reason existed for granting a

continuance, and that, therefore, trial counsel was not ineffective for failing to request a continuance. On appeal, the Petitioner challenges this ruling.

## II. Analysis

To be successful in a claim for post-conviction relief, a petitioner must prove the factual allegations contained in the post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

<u>Goad</u>, 938 S.W.2d at 370 (citing <u>Strickland</u>, 466 U.S. at 697).

On appeal, the Petitioner contends that on the day of trial, she was not in an "optimal emotional state" to clearly recall events and testify about the facts. She asserts that trial counsel knew she was distressed and had mental health concerns, which should have led him to request a continuance until she could more "effectively communicate to the jury." She argues that she was prejudiced because the jury accredited the victim's testimony instead of her testimony. In response, the State contends that the Petitioner never told trial counsel she wanted a continuance; that the Petitioner failed to establish that a continuance would have been granted; and that the Petitioner did not show how the outcome of the trial would have been different even if a continuance had been granted. We agree with the State.

The post-conviction court noted, "[I]f you're a defense lawyer, the norm is that your client is going to be upset. . . . [E]specially if your client truly believes she's innocent, she's going to be frustrated. These are . . . not reasons for continuing cases." No proof was presented at the post-conviction hearing other than the Petitioner's testimony that she had mental health issues. The post-conviction court further noted that the Petitioner's case had been pending for one and one-half to two years at the time it was tried and that the Petitioner "had no idea whether or if she was ever going to . . . feel good again, calm and have clarity." Accordingly, the post-conviction court found that it was unlikely the trial court would have granted a continuance. Moreover, the post-conviction court found that the Petitioner did not ask trial counsel to request a continuance. Therefore, the court found that trial counsel was not deficient by failing to request a continuance. The court also found no evidence of prejudice and determined that the Petitioner was asking essentially "to get a do-over, to take another shot at it," which was "not what post-conviction relief is about." We note that the jury heard everything the Petitioner wanted the jury to hear; therefore, the Petitioner has not shown that the outcome of the trial would have been different if a continuance had been granted. Accordingly, we conclude that the Petitioner failed to establish that trial counsel was ineffective.

## III. Conclusion

The judgment of the post-conviction court is affirmed.

_____
NORMA MCGEE OGLE, JUDGE

- 6 -